# Charles Warner Company *v*. Exeter Machine Works, Appellant.

*Evidence—Cross-examination—Latitude of cross-examination—Res gestæ—Discretion of court.*

The range of a cross-examination must, to a very great extent, be left to the sound discretion of the trial judge, and unless that discretion has been plainly abused, to the injury of the party complaining, it is not ground for reversal; and this is particularly the case where the alleged new matter developed is but a part of the res gestæ.

Argued Oct. 19, 1914. Appeal, No. 39, March T., 1914, by defendant, from judgment of C. P. Luzerne Co., June T., 1910, No. 281, on verdict for plaintiff in case of Charles Warner Company v. Exeter Machine Works. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for the breach of an express warranty in a contract by which the defendant sold an engine to the plaintiff. Before STRAUSS, J.

At the trial the defendant called as an expert witness George Haiss who was familiar with engines operating clam-shell buckets. He testified in chief that leather friction was used on all engines manufactured by Mead, Morris & Company for the operation of clam-shell buckets, and he also named other firms who had used that method of friction on their engines. On cross-examination

478   WARNER CO. *v.* EXETER MACH. W., Appellant.

Statement of Facts—Opinion of Court below.   [58 Pa. Superior Ct.

he was asked this question: "Q. Is it not a necessary part of good design to use tandem drums, to lead the ropes direct to the foot of the mast, when a revolving derrick and bull wheel type are employed?"

Objected to as not proper cross-examination.

The Court: I think the door has been opened to a general cross-examination on the subject of engines used in operating clam-shell buckets, to ascertain the extent of his information, when testifying as an expert. The objection is overruled and an exception noted for defendant. [1]

"Q. Where Mead, Morris & Co., use leather frictions, are not these the principles adopted? Don't they bring the bearings as close together as possible by locating the friction under the main gear wheels and by making the narrow faced drums?"

Objected to as not proper cross-examination.

The Court: The objection is overruled and an exception noted for the defendant.

"Q. (Cont.) And does not this reduce the shaft springing and troubles from getting out of alignment?"

Objected to as not proper cross-examination.

The Court: Objection overruled and an exception noted for the defendant. [2]

Verdict and judgment for plaintiff for $1,096.38.

On motion for a new trial STRAUSS, J., filed the following opinion:

The argument on this motion concerned itself with exceptions to certain cross-examination of George Haiss, one of the defendant's witnesses.

The suit is an action for breach of an express warranty of a hoisting engine, derrick, and an appliance known as a clam-shell bucket, resulting from a bad design of the engine which manifested itself more particularly in the frequent destruction of frictions. In the engine as originally constructed these were bands of leather placed around a flange projection on

each of two drums in such manner that when a drum by means of a lever was pushed against the spur wheel, the frictions made the connections with the spur wheel, whereby the drum, which was loose upon the shaft, revolved with the spur wheel, which was fixed to and revolved with the shaft. The shaft was eight feet ten inches long. The spur wheel was in the middle of the shaft and the drums were placed on the shaft, one on each side of the spur wheel. When a drum was pushed against a spur wheel, the friction flange, in the shape of a truncated cone, was pushed into a countersunk cavity in the spur wheel having the exact size and form of the flange. Around each drum there was a wire rope which was wound or unwound by a corresponding revolution of the drum. This rope was carried from the drum to a derrick and thence to the clam-shell bucket that was to be, by means of the rope from one of the drums, hoisted and lowered; and by the rope from the other drum closed and opened. Because the drums were placed not centrally upon the shaft, but on each side of the spur wheel, the rope could not be carried at right angles to the foot of the derrick but had to be brought there circuitously around sheave wheels.

The plaintiff produced testimony, that through having two drums and a spur wheel on a shaft nearly nine feet long, there was a tendency in the shaft to sag and thereby to bring the friction into contact with the spur wheel closely at the top but imperfectly elsewhere; that the usual design of a hoisting engine of this size provided that each drum was on a short shaft by itself, one drum being placed in front of, and a little lower down than the other by which so-called "tandem" construction the ropes could be carried to the foot of the derrick without the intervention of sheaves and without interfering with one another; that very soon after the machine had been put in operation, the leather frictions were torn out and that others were successively torn out; that subsequently a material called fiber was used

in place of the leather and that this also rapidly degenerated and was torn out; that the brake for controlling the speed of the drum was placed at the friction end of the drum whereby heat resulting from applying the brake destroyed the frictions whether leather or fiber; and that proper construction required this brake to be put at the other end of the drum away from the frictions and that in this machine wood friction would have been more reliable.

It will thus be seen that the question involved not simply the suitableness of leather for use in frictions as an abstract proposition but its use in this particular machine. To partially meet the plaintiff's evidence, the defendant put upon the stand the witness Haiss as an expert who was "the designer of the Haiss bucket called for by the specifications . . . . familiar with various kinds of engines . . . . had built them for about eight years; . . . . familiar with engines operating a clam-shell bucket . . . . and with engines that operated mast and gaff derricks, tower derricks, stiff legged derricks, . . . . revolving derricks; . . . . acquainted with the character of frictions, wood and . . . . leather; knew that Meade & Morris used leather altogether (though he qualified this by stating under cross-examination that they also used wood in at least one form of their engines); named other firms, manufacturers of hoisting engines who used leather, but stated that in the machines constructed by himself he used wood frictions; testified that a hammered steel shaft five one-half inches thick and eight feet and one inch between centers, in an engine operating a clam-shell bucket, would not be deflected.

Now, it seems perfectly evident that the suit was not concerned abstractly with the use of leather for frictions in engines generally but with mechanical requirements in this particular engine. Unless that was the purpose of Haiss's testimony it would necessarily have been excluded as irrelevant. It is true that the defendant's

attorney abstained (whether purposely or inadvertently is of no consequence) from asking the opinion of this expert whether the use of a leather friction was consistent with the requirements of this particular machine, but left that to be inferred. Had the witness been asked directly whether in his opinion in this machine, frictions might be properly of leather, there can be no doubt that on cross-examination his attention might have been called to the particular character of this design as it might bear on the question of frictions. Having stated his experience and expressed an opinion concerning the use of leather and the liability of a shaft to sag, the door was undoubtedly open to ascertain how broad his knowledge was relating to the construction of engines, and whether he really had the experience on which the jury, who was to weigh his opinion, might rely. In view of the opinions expressed by him we were of the opinion at the trial that the plaintiff was justified in asking the question whether it was "not a necessary part of good design to place the drums tandem, that is, one before the other, and to lead the ropes directly to the foot of the mast when a revolving derrick and bull wheel type are employed;" and the witness also having testified that Meade & Morris Company used leather frictions, the plaintiff had the right on cross-examination to ask the question: "Where Meade & Morris Company use leather frictions are not these principles adopted? Don't they bring the bearings as close together as possible by locating the frictions under the main gear wheels and making the narrow faced drums, and don't they reduce the shaft springing and troubles from getting out of alignment . . . . and as a result of that this reduces the shaft spring, doesn't it and the trouble from getting out of alignment . . . . and isn't it equally true that they (Meade & Morris), do not use brakes on top of frictions and they adopt a special air circulating method to keep the frictions cool, don't they?"

As we have remarked, the issue involved was not the

use of leather in any machine, but whether in this machine which seemed to reject leather by tearing it out time after time, wood was preferable as a part of the design. When a machine's design is under consideration it would be an abuse of language to refer only to outlines as they might be depicted in a drawing or shown by a photograph. The fact that one part must be iron and another brass, a third leather or wood, in order to produce efficiency and durability is just as much a matter of design as that one part shall be cylindrical and another conical. When, therefore, a litigant is compelled to meet expert opinions with countervailing expert opinions regarding the use of leather in this machine, the expert called for the purpose is in fact expected to give his opinion on the matter of design, even though the examining attorney successfully avoids using the word "design," and the witness may be cross-examined as to other elements in form, material, or practical working of the machine that have bearing upon the use and wearing qualities of the special thing (e. g., leather frictions) to which in direct examination the attorney has endeavored to limit the testimony. If the evidence of the plaintiff tends to show that leather is a badly chosen material in this particular machine, not because it is inherently defective or unfit for use generally and in all machines, but only because it is specially unfit in this machine, then by cross-examination it may be elicited from an expert who has general knowledge of this class of engines that there are defects in the construction of this machine from which the special unfitness might be the natural or reasonable inference. If the good character of leather cannot be established except by an expert, who on cross-examination will condemn the general design in a matter directly bearing on the use of leather, the calling of such a witness will necessarily be accompanied by the risk that the cross-examiner may successfully weaken the force of the witness's testimony. · Such risks are

common in forensic combats and must occasionally be taken by the most expert trial lawyers.

Now, January 16, 1914, the reasons for new trial are overruled; new trial refused and judgment is directed to be entered upon the verdict.

Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence as above, quoting the bill of exceptions.

*Martin J. Mulhall,* with him *H. A. Gordon* and *A. L. Williams,* for appellant, cited: Floyd v. Bovard, 6 W. & S. 75; Helser v. McGrath, 52 Pa. 531.

*M. W. Lowry,* with him *John T. Lenahan,* for appellee, cited: Smith v. Phila. Traction Co., 202 Pa. 54; Glenn v. Phila., etc., Traction Co., 206 Pa. 135.

PER CURIAM, November 16, 1914:

In Glenn v. Philadelphia and West Chester Traction Company, 206 Pa. 135, Mr. Justice MESTREZAT stated the general rule as to the cross-examination of witnesses and then said: "While this is the rule, yet the range of a cross-examination must, to a very great extent, be left to the sound discretion of the trial judge, and unless that discretion has been plainly abused, to the injury of the party complaining, it is not ground for reversal."

In support of this proposition numerous cases are cited. In addition to these, Smith v. Traction Co., 202 Pa. 54, may be appropriately cited.   Mr. Justice BROWN speaking of the cross-examination there under consideration said: "Even if, in one sense, it was new matter, yet, in another point of view, it was but developing a part of the res gestæ, and this the defendant had a right to inquire into by cross-examination: Markley v. Swartzlander, 8 W. & S. 172."   The principle there referred to is applicable here.   The cross-examination complained of was upon what was a material part of the res gestæ.   This has

484 WARNER CO. *v.* EXETER MACH. W., Appellant.

been so clearly shown in the opinion rendered by Judge STRAUSS upon the rule for new trial that we deem further discussion unnecessary. In any view that may be taken of the case it is very clear that permitting the cross-examination of the defendant's witness was not an abuse of discretion to the injury of the defendant.

The assignments of error are overruled and the judgment is affirmed.